**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 21-24429-CIV-MORENO/GOODMAN**

MATTHEW GEORGE OCHMANSKI,

      Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON SUMMARY JUDGMENT MOTIONS

This case challenges a denial of social security benefits. Plaintiff Matthew George Ochmanski ("Ochmanski," "Plaintiff," or "Claimant") and Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Commissioner"), filed cross-motions for summary judgment. [ECF Nos. 13; 16]. The Commissioner's summary judgment motion also served as her opposition response to Ochmanski's motion. [ECF No. 17]. Ochmanski filed a response to the Commissioner's motion which was also her reply. [ECF No. 20].[1] The Commissioner did not file an optional reply.

According to the Clerk's directive in these types of administrative appeals, all

---

[1] Ochmanski also filed ECF No. 18, which appears to be a duplicate of his summary judgment motion [ECF No. 13]. The Undersigned struck this unauthorized filing. *See* [ECF No. 19].

dispositive matters have been referred to the Undersigned for a Report and Recommendations. [ECF No. 2].

As explained below, the Undersigned **respectfully recommends** that the District Court **grant** Ochmanski's summary judgment motion, **deny** the Commissioner's summary judgment motion, and **remand** the case back to the Commissioner.

## I.     Procedural Background

On May 8, 2014, Ochmanski applied for a period of disability and disability insurance benefits ("DIB"), alleging a disability with an onset date of May 1, 2012. (R. 93; 168-74).[2] The Commissioner denied the application initially and on reconsideration. (R. 110-12; 119-23). After a hearing on October 16, 2015 (R. 41-81), Administrative Law Judge Mary F. Withum ("ALJ Withum") determined that Ochmanski was not disabled. (R. 20-40). The Appeals Council denied review of ALJ Withum's decision. (R. 1-7).

Ochmanski appealed ALJ Withum's decision to the District Court and it was remanded for a rehearing based on an error in assessing records from the Veteran's Administration ("VA") regarding its disability rating and related evidence. (R. 3011-12; 3018-21; 3044-49). On remand, ALJ Rebecca Wolfe ("ALJ Wolfe" or "ALJ") held a hearing on January 8, 2020 (R. 2909-97) and determined that Ochmanski was not disabled. (R. 2874-96). The Appeals Council denied review of ALJ Wolfe's decision. (R. 2874-96). The

---

[2]     Citations to ("R. __") refer to pages of the administrative record transcript. [ECF No. 9].

matter is now ripe for review.

## II.    Factual Background

Ochmanski was born on August 21, 1978 (R. 201) and was therefore 33 years old on the alleged disability onset date of May 1, 2012 and 38 years old on the date last insured. He has a high school education. (R. 47). Ochmanski has past relevant work as a security guard, a detective, and a traffic technician. (R. 2982-83).

## III.   Applicable Legal Standards

In evaluating a claim for disability benefits, an ALJ must follow the five steps outlined in 20 C.F.R. §§ 416.920(a) and 404.1520, which the Undersigned summarizes as follows:

1. **Step one**. Is the claimant performing substantial gainful activity? If not, then an ALJ next determines:

2. **Step two**. Does the claimant have one or more severe impairments? If the claimant does, then an ALJ next considers:

3. **Step three**. Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled; if not, then an ALJ must determine the claimant's residual functional capacity ("RFC"); and then determine:

4. **Step four**. Based on the RFC, can the claimant perform his or her past relevant work? If so, then the claimant is not disabled. If the claimant cannot perform his or her past relevant work, then an ALJ must finally determine:

5. **Step five**. Based on the claimant's age, education, and work experience, and the RFC, can he or she perform other work? If so, then the claimant is not disabled. If not, then the claimant is disabled and entitled to benefits.

*See Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). In reviewing the decision, the Court must consider the record as a whole and determine whether the ALJ applied the correct legal standard and whether substantial evidence in the record supports the ALJ's findings of fact. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips*, 357 F.3d at 1240 n.8 (internal citation omitted).

The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal citation omitted). And "[i]f the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (internal citation omitted).

The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of an ALJ, with or without remand. 42 U.S.C. § 405(g); *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1302 n.13 (11th Cir. 2000).

## IV.     The ALJ's Findings

In denying Ochmanski's claim for benefits, ALJ Wolfe followed the sequential five-step evaluation process for social-security claims. (R. 2874-96). At step one, the ALJ

concluded that Ochmanski had not engaged in substantial gainful activity from July 27, 2012 through his date last insured of December 31, 2016.[3] (R. 2878).

At step two, the ALJ concluded that Ochmanski had the following severe impairments: bipolar disorder II; anxiety disorder; history of PTSD; bilateral shoulder rotator cuff tears status-post surgery; bilateral elbow epicondylitis status-post surgery; bilateral shoulder osteoarthritis; and obesity. *Id.*

At step three, the ALJ concluded that Ochmanski did not have an impairment or combination of impairments classifiable as a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 2879). Next, the ALJ determined that Ochmanski has the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except occasionally push/pull; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally stoop and crouch; and frequently kneel, crawl or balance. The [C]laimant could frequently overhead reach with the dominant right hand; occasionally overhead reach with the left hand; frequently reach bilaterally in all other directions; and frequently handle and finger bilaterally. He could have no exposure to hazardous machinery/mechanical parts, work at unprotected heights, extreme cold, wetness, humidity, vibration, and concentrated loud noise. The [C]laimant was able to understand and carry out simple and detailed oral and written instructions; and frequently respond to changes and demands in a routine work setting. He could have occasional interaction with co-workers, supervisors, and the public; but performed best when work dealt with objects rather than people. The [C]laimant was able to complete simple, routine, repetitive tasks, but not at a production rate or pace. He could

---

[3]   ALJ Wolfe denied Ochmanski's request to reopen his earlier application. (R. 2875). Thus, ALJ Wolfe's decision considered only the time period from July 27, 2012 through December 31, 2016. *Id.* These dates represent the day after the earlier disability determination became final (July 27, 2012) and the date last insured (December 31, 2016).

occasionally perform tasks requiring sustained focus and complex mental demands.

(R. 2882).[4]

At step four, the ALJ concluded that Ochmanski could not perform his past relevant work as a Security Guard, Detective I, and Traffic Technician. (R. 2894).

Lastly, at step five, the ALJ found that there are jobs existing in significant numbers in the national economy that Ochmanski can perform, including Cigar Inspector and Marker. (R. 2896). Accordingly, the ALJ found that Ochmanski has not been under a disability from July 27, 2012 through December 31, 2016. (R. 2896).

## V.   Analysis

Plaintiff contends the Commissioner's post-remand decision is not supported by substantial evidence. [ECF No. 13]. Ochmanski raises three arguments in support of reversal. First, he argues that ALJ Wolfe failed to properly weigh the medical opinion evidence. *Id.* at 25-37. Second, he argues that ALJ Wolfe did not adequately consider the VA disability determination. *Id.* at 37-39. Finally, Ochmanski argues that ALJ Wolfe failed to properly evaluate Ochmanski's testimony. The Commissioner maintains that the ALJ's

---

[4]     Although ALJ Wolfe included both physical and mental limitations in the RFC, Plaintiff does not dispute the RFC's physical limitations. [ECF No. 13, p. 3 n.4]. "[A]ny argument not raised is deemed waived for purposes of this appeal." *Ramos v. Saul*, No. 18-24519-CIV, 2020 WL 5096879, at *6 (S.D. Fla. Aug. 28, 2020) (citing *Robinson v. Astrue*, 235 F. App'x 725 (11th Cir. 2007); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318-19 (11th Cir. 2012)). Therefore, the Undersigned's discussion of Plaintiff's medical records and the ALJ's findings is limited to Plaintiff's *mental* impairments.

decision is supported by substantial evidence. [ECF No. 16].

The Undersigned agrees with Plaintiff on the second issue. For the reasons discussed below, ALJ Wolfe did not adequately consider the VA's disability determination. This ground alone warrants a remand. Nonetheless, for the sake of completeness, the Undersigned will also address Ochmanski's other arguments.

### A.    *Medical Opinion Evidence*

Ochmanski contends that the ALJ failed to properly assess the medical opinion evidence. [ECF No. 13, pp. 25-35].[5] The Commissioner maintains that "the ALJ properly considered and weighed the medical opinion evidence together with the other relevant evidence in assessing Plaintiff's RFC." [ECF No. 16, p. 5]. She states that Ochmanski cites to mostly his subjective complaints and evidence outside the relevant time period (July 27, 2012 through December 31, 2016). *Id.* at 7. She further states that "despite Plaintiff's subjective complaints, the mental status exams were generally normal, except for mood an [sic] affect, including no abnormalities as to cognitive functioning, thought content, memory, concentration and attention, insight, and judgment" and that "the ALJ accounted for mood abnormalities by assessing medically determinable mental health impairments and imposing related mental RFC limitations." *Id.* at 7-8.

The ALJ assigned the following weights to the opinions of Plaintiff's medical

---

[5]    When citing to the parties' briefs, the Undersigned cites to the page numbers automatically generated by the Court's CM/ECF database, which appear in the top, right-hand corner of each page.

providers: non-examining psychologist Olin M. Hamrick, PhD ("significant weight"), VA treating psychiatrist Cristobal A. Nogues, MD ("some weight"), VA treating psychologist Gabriela F. Ott, PsyD ("some weight"), examining psychologist Alejandro Arias, PsyD ("some weight"), DDS reviewing psychologists Rodolfo Buigas, PhD and Alicia Maki, PhD ("some weight"), VA treating psychiatrist Jose M. Gonzalez, MD ("little weight"), examining psychologist Anthony J. Fischetto, EdD ("little weight"), and therapist Vicky Brail, LCSW ("little weight"). (R. 2889-92).

For claims filed before March 27, 2017, the ALJ must give the medical opinions of treating physicians substantial or considerable weight, unless good cause justifies a contrary finding. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) ("Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians substantial or considerable weight." (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997))).

Good cause to discount a treating physician's opinion exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* "Courts will not 'second guess' the ALJ's determination of the treating physician's opinion, so long as the ALJ articulates specific justification for it." *Fleming v. Kijakazi*, No. CV 322-005, 2022 WL 6727253, at *5 (S.D. Ga. Oct. 11, 2022), report and recommendation adopted, No. CV 322-005, 2022 WL 16641056

(S.D. Ga. Nov. 2, 2022) (citing *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015)).

Here, the ALJ's decision demonstrates that she evaluated the medical opinion evidence under the applicable legal standards and gave specific reasons for the weights she assigned. (R. 2890-92).

As explained in her decision, the ALJ gave "some weight" to Dr. Nogues' opinion and provided reasons for that assessment:

> To the extent consistent with the findings herein, I also give some weight to VA treating psychiatrist Dr. Nogues who, on June 16, 2014 and January 15, 2015, opined the [C]laimant had no limitation to moderate limitation in areas of understanding and memory; no limitation to marked limitation in areas of concentration and persistence; moderate to marked limitation in areas of social interaction; and no limitation to marked limitation in areas of adaptation. More specifically, he opined the [C]laimant had no limitation to mild limitation in understanding, remembering and carrying out simple, one-to-step instructions and making simple work-related decisions; moderate limitation in understanding, remembering and carrying out detailed instructions; marked limitation in maintaining attention and concentration for extended periods, but moderate limitation in completing a complete workday without interruptions; marked limitation in interacting with supervisors and co-workers, but moderate limitation in interacting with the public; moderate limitation in responding appropriately to workplace changes; no limitation in making plans independently; and required more than 2-3 days absence per month (Ex. 6F; Ex. 16F).

> Dr. Nogues' opinion is given some weight because of his long-term treatment of the [C]laimant and partial consistency with the overall record with regard to understanding and memory. However, **portions of the remainder of the opinion are inherently inconsistent, for example an individual who has marked limitation in sustained concentration would not be expected to have only moderate limitation in completing a workday without interruptions. The opinion is also unsupported by his**

> **consistent generally benign examination findings; moderate [Global Assessment of Functioning ("GAF")] score assignments; and repeated determinations that depressive and anxiety symptoms were well-controlled with medication**. Moreover, Dr. Nogues' November 8, 2011 opinion that the [C]laimant could remain stable and functional for years (Ex. 26F) is more consistent with and supported by the overall record, as described above (Ex. 3E; Ex. 1F; Ex. 3F; Ex. 4F; Ex. 5F; Ex. 9F; Ex. 11F; Ex. 13F; Ex. 23F; Hearing Testimony).

(R. 2890-91) (emphasis added).

The ALJ's assessment of Dr. Nogues' opinion is supported by substantial evidence. The ALJ cited normal findings on examination, moderate GAF scores, and notes indicating that Plaintiff's symptoms stemming from his depression and anxiety were well-controlled with medication. The reasons proffered by the ALJ constitute good cause for giving Dr. Nogues' opinion less than controlling weight. *See, e.g., Pena Lebron v. Comm'r of Soc. Sec.*, No. 18-CV-125 (BCM), 2019 WL 1429558, at *15 (S.D.N.Y. Mar. 29, 2019) (finding no error in assigning "little weight" to the opinions of a treating psychiatrist where "the ALJ permissibly relied on "normal findings throughout [the doctor]'s mental health treatment records, as well as [the doctor]'s GAF assessments of 55 and 70" (internal quotation marks and citation to the record omitted)); *Ross v. Comm'r of Soc. Sec.*, No. 6:15-CV-1764-ORL-DCI, 2017 WL 1180004, at *5 (M.D. Fla. Mar. 30, 2017) ("find[ing] that the ALJ articulated sufficient good cause to assign [treating psychiatrist]'s opinion little weight" given the opinion's "inconsisten[cy] with [the doctor's] treatment notes, including [the] [c]laimant's GAF scores and [the doctor's] apparent reliance on [the [c]laimant's subjective complaints").

The fact that Ochmanski is able to cite to other portions of the record which he believes undermines the weight afforded by the ALJ, [ECF No. 13, p. 28], does not compel a different result. "Under a substantial evidence standard of review, [the plaintiff] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) ("Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence. (citing 42 U.S.C. § 405(g))).

The Court must not "reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer*, 395 F.3d at 1210. Because there is evidence which supports the ALJ's ascribed weight, there is no basis to find that the ALJ erred in her determination on this issue. As noted above, the Court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as [the ALJ] articulates a specific justification for it." *Hunter*, 808 F.3d at 823.

According to Plaintiff, "[t]he ALJ's conclusion that Dr. Nogues' opinions are inherently inconsistent because they found Mr. Ochmanski has marked limitations in sustained concentration but moderate limitations in completing a workday without interruptions is . . . flawed" because "[t]here is no reason why both limitations cannot be

accurate." Plaintiff contends, without support, that "an individual can be moderately limited in completing a workday without interruptions from psychological symptoms but markedly limited in sustaining concentration over an extended period of time[.]" [ECF No. 13, pp. 30-31].[6] Plaintiff further states that "if the ALJ felt this alleged inconsistent [sic] was not clear, she should have asked the doctor to clarify the opinions or at least made her concerns known to counsel for Plaintiff." *Id.* at 31.

But the record does not reflect that the ALJ was confused or unclear about what she believed was an inconsistency between two limitations ascribed by Dr. Nogues. Plaintiff's disagreement with the ALJ's determination that this is in fact an inconsistency does not mean that the ALJ was under any obligation to seek further information or clarification from Dr. Nogues. *See Lett v. Kijakazi*, No. 4:21-CV-00105-LSC, 2022 WL 4133301, at *7 (N.D. Ala. Sept. 12, 2022) ("The ALJ had no duty to take any steps to resolve an inconsistency in Dr. Iyer's medical opinion if she determined that other evidence in the record provided a sufficient basis on which to make a disability determination.").

Moreover, this cited inconsistency was one of several reasons provided by the ALJ for assigning "some weight" (as opposed to controlling weight) to Dr. Nogues' opinion. As noted above, the additional reasons -- normal findings on examination, moderate GAF

---

[6]     The Commissioner states, also without support, that "the two concepts are related and if Plaintiff had marked limitations on his ability to concentrate, persist, or maintain pace, it stands to reason that he would not be having psychological symptoms that only moderately interfered with this abilities [sic] in this domain." [ECF No. 16, pp. 8-9 (record citation omitted)].

scores, and notes indicating that Plaintiff's symptoms stemming from his depression and anxiety were well-controlled with medication -- provided substantial evidence to support the ALJ's assessment of Dr. Nogues' opinion. *See Rutledge v. Soc. Sec. Admin., Comm'r*, No. 4:20-CV-00708-HNJ, 2021 WL 4081091, at *10 (N.D. Ala. Sept. 8, 2021) ("Because the ALJ relied upon substantial evidence contradicting Dr. Oguntuyo's opinion, he maintained no duty to seek clarification from Dr. Oguntuyo, or to obtain additional medical evidence to support his decision.").

Ochmanski also argues that "the ALJ . . . erred to the extent that she concluded GAF scores in the treatment records conflict with the opinions that Mr. Ochmanski has disabling mental limitations" because "[t]he Commissioner and the psychiatric community have taken the position that a claimant's GAF score is not considered to have a 'direct correlation to the severity requirements' under the disability framework." [ECF No. 13, p. 31 (quoting 65 Fed. Reg. 50746, 50764-5 (2000))].

But an "ALJ 'may properly consider, among other information, whether a treating source's opinion is consistent with the GAF scores assessed by that treating source' as long as that is not the *sole* basis for discounting that source's opinion." *Benjamin H. v. Comm'r, Soc. Sec. Admin.*, No. 1:19-CV-02477-RGV, 2020 WL 13594806, at *13 (N.D. Ga. Nov. 30, 2020) (quoting *Garcia v. Colvin*, No. 13–CV–6433P, 2015 WL 1280620, at *7-8 (W.D.N.Y. Mar. 20, 2015)) (emphasis added); *see also Ross v. Comm'r of Soc. Sec.*, No. 6:15-CV-1764-ORL-DCI, 2017 WL 1180004, at *5 (M.D. Fla. Mar. 30, 2017) ("The ALJ may

consider GAF scores in weighing opinions, *see Marshall v. Comm'r, Soc. Sec. Admin.*, 660 [F. App'x] 874, 876 n.3 (11th Cir. 2016), and, in this case, the ALJ properly noted that [the] [c]laimant's GAF scores, which denote mild to moderate symptoms, [were] not entirely consistent with [the treating psychiatrist]'s opinion."); *Urtecho v. Colvin*, No. 5:14CV155/CJK, 2015 WL 5635272, at *8 n.10 (N.D. Fla. Sept. 18, 2015) ("[T]he ALJ articulated good cause to discount [the treating physician]'s opinion because the opinion was inconsistent with the doctor's treatment notes, claimant's subjective statements, and claimant's GAF scores.").

As to Dr. Gonzalez, the ALJ stated:

> I give little weight to VA treating psychiatrist Dr. Jose Gonzalez, MD who, on March 8, 2019, June 12, 2019, and December 23, 2019, opined the [C]laimant was totally disabled and permanently incapable of any kind of work (Ex. 25F, Ex. 30F; Ex. 34F). **The opinion is given little weight because, as discussed above, findings of disability are reserved to the Commissioner**. **Moreover, Dr. Gonzalez did not provide a function-by-function analysis, and the opinions were rendered 2-3 years after the date last insured. I also give little weight to his May 7, 2018 opinion that, in summary, the [C]laimant had no more than moderate limitation in understanding, remembering and carrying out 1 to 2 step instructions; but marked limitation in understanding, remembering and carrying out detailed instructions and most areas of concentration and persistence; social interaction; and adaptation (Ex. 20F). The opinion is given little weight, because it is generally inconsistent with the relevant time-period record, as described above.** Moreover, **it was rendered about 1.5 years after the date last insured**; and there is no evidence that Dr. Gonzalez treated the [C]laimant during the relevant time-period (Ex. 3E; Ex. 1F; Ex. 3F; Ex. 4F; Ex. 5F; Ex. 9F; Ex. 11F; Ex. 13F; Ex. 23F; Hearing Testimony).

(R. 2892) (emphasis added).

Plaintiff argues that "[a]lthough Dr. Gonzalez began treating [him] after the date

14

last insured, this does not mean his retrospective opinions are invalid[.]" [ECF No. 13, p. 30]. Plaintiff argues that because Dr. Gonzalez treated him at the VA, Dr. Gonzalez "had access to records that pre-date the expiration of Mr. Ochmanski's insured status." *Id.* Plaintiff further states that "[Dr. Gonzalez] reported findings that are identical to those documented prior to the date last insured." *Id.*

A claimant may rely on a retrospective medical opinion and the ALJ may not reject that opinion *solely* because it was retrospective in nature. "In this [C]ircuit, especially, the ALJ must point to substantial evidence in the record to discount the opinion of a treating physician, whether retrospective, contemporary, or prospective." *Garvey v. Astrue*, No. 1:07-CV-00021MPWCS, 2007 WL 4403525, at *7 (N.D. Fla. Dec. 12, 2007).

Here, the ALJ articulated specific reasons for assigning "little weight" to Dr. Gonzalez's opinion and those reasons are supported by the record. "When the ALJ articulates specific reasons for not giving the treating physician's opinion controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Schuhardt v. Astrue*, 303 F. App'x 757, 759 (11th Cir. 2008) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)). Thus, the ALJ committed no error in assigning little weight to Dr. Gonzalez's opinion.

Ochmanski also argues that "the ALJ erred by failing to consider [the] obviously probative factors" listed in 20 CFR 404.1527 and 416.927 when evaluating the opinions of Drs. Nogues and Gonzalez. [ECF No. 13, pp. 35-36]. But the ALJ is not required to

explicitly address each of those factors. *See Rodgers v. Comm'r of Soc. Sec.*, No. 6:15-CV-472-ORL-CM, 2016 WL 3548496, at *3 (M.D. Fla. June 30, 2016) ("Although the regulations require that the ALJ consider all factors set forth in 20 C.F.R. § 404.1527(c), the ALJ is not required to expressly address each factor so long as he demonstrates good cause to reject the opinion." (citing *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011))); *see also Ramsdell v. Kijakazi*, No. 8:20-CV-3043-CPT, 2022 WL 16707193, at *3 (M.D. Fla. Nov. 4, 2022) ("While an ALJ is required to assess all of these factors, he need not explicitly address each of them in his decision."). Thus, Ochmanski has not shown that the ALJ erred on this ground.

Plaintiff also takes issue with the ALJ giving "some weight" to the opinions of the DDS reviewing psychologists (Rodolfo Buigas, PhD and Alicia Maki, PhD). [ECF No. 13, p. 33]. Drs. Buigas and Maki opined that Ochmanski "had mild limitation in restriction of [activities of daily living ("ADLs")] and maintaining social functioning[;] moderate limitation in maintaining concentration, persistence or pace[;] and no limitation in repeated episodes of decompensation." (R. 2891). They also opined that Ochmanski "was able to engage in unskilled activities; carry out instructions; maintain a schedule; make decisions; work in proximity to others and even limited coordination; work independently; and had capacity to adapt." (R. 2891-92).

The ALJ stated that she was giving "some weight" to these opinions because of the DDS reviewing psychologists' "familiarity with Social Security Rules and Regulations,"

their citation "to relevant supporting evidence available at the time," and because the opinions were "generally consistent with the overall record." (R. 2892). Nonetheless, the ALJ acknowledged that these opinions "were rendered in 2014 and the consultants did not have the benefit of the evidence at the hearing level." *Id.*

Per Plaintiff, "[t]he ALJ gave no reason, let alone a good reason, for accepting the opinions [of the] non-examining consultants over the well supported opinions from every source who examined Plaintiff." [ECF No. 13, p. 34].

But, as discussed in this R&R, the ALJ's assessment of treating psychiatrists Dr. Nogues and Dr. Gonzalez's opinions is supported by substantial evidence and Plaintiff has not shown that the ALJ erred in assigning some weight to the opinions of the state agency consultants. [ECF No. 13, p. 34]. *See Butler v. Kijakazi*, No. 8:20-CV-382-CPT, 2021 WL 4473132, at *8 (M.D. Fla. Sept. 29, 2021) (noting that "[a]n ALJ may . . . credit the opinion of a non-examining, non-treating physician over that of a treating or examining physician if the ALJ has found good cause to discount the treating or examining physician's opinions" and finding that ALJ did not err in affording "some weight" to the opinion of a state agency physician); *Trapnell v. Comm'r of Soc. Sec.*, No. 5:20-CV-83-PRL, 2021 WL 9096628, at *6 (M.D. Fla. Sept. 28, 2021) ("Opinions of non-examining state agency reviewing physicians may be credited over the opinion of a treating physician when good cause is stated for discounting the treating physician's opinion.").

Plaintiff also argues that although the ALJ gave "some weight" to the opinions of

Dr. Ott, an examining psychologist, "Dr. Ott's report does not support the ALJ's decision" because she "only vaguely stated that Mr. Ochmanski has occupational and social impairments with occasional decrease in work efficiency and intermittent periods of an inability to perform occupational tasks with normal routine behavior, self-care, and conversation" and she "evaluated Mr. Ochmanski prior to the date Plaintiff claimed his disability began." [ECF No. 13, p. 34 (citing R. 2748)].

The Commissioner responds that the ALJ properly gave some weight to Dr. Ott's opinion, noting that Dr. Ott examined Plaintiff just one week before his alleged onset date. [ECF No. 16, p. 12].

The ALJ stated that:

> To the extent consistent with the findings herein, I also give some weight to VA examiner Dr. Gabriela F. Ott, PsyD who, on April 24, 2012, opined the [C]laimant had an occupational and social impairment, with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily with normal routine behavior, self-care and conversation (Ex. 11F). **The opinion is given some weight because it is supported by her completely benign contemporaneous examination findings; and demonstrates the no more than moderate limitations reflected in the overall record, as described above**. However, the opinion was rendered in connection with the [C]laimant's VA disability application, that has a different standard and process for review; and **she did not provide a complete function-by-function analysis** (Ex. 3E; Ex. 1F; Ex. 3F; Ex. 4F; Ex. 5F; Ex. 9F; Ex. 11F; Ex. 13F; Ex. 23F; Hearing Testimony).

(R. 2891) (emphasis added).

The reasons articulated by the ALJ for giving "some weight" to Dr. Ott's opinion are supported by the record. Moreover, any error in the ALJ's discussion of Dr. Ott's

opinion which pre-dates the relevant time period is harmless because Plaintiff has not shown that it affected the ALJ's ultimate determination. *See I. W. v. Saul*, No. 119CV194LAGTQL, 2021 WL 8268055, at *15 (M.D. Ga. Sept. 30, 2021) ("[A]ny error the ALJ committed by considering the earlier reports is harmless as they are consistent with treatment notes from after the onset date." (citing *Hunter*, 609 F. App'x at 558)).

Finally, the ALJ did not err in evaluating the opinion of Ms. Brail. Ms. Brail is a therapist and licensed clinical social worker who "in testimony and treating source statements submitted on October 5, 2015 and August 12, 2018, opined that it was impossible for the claimant to perform full or part-time work." (R. 2892).

Plaintiff argues that the ALJ failed to properly evaluate Ms. Brail's opinion. [ECF No. 13, p. 36]. He further states that the ALJ erred when she "rejected the opinion[] [evidence] from Ms. Brail as allegedly based on Mr. Ochmanski's subjective statements rather than medical findings" because Ms. Brail:

> specified that her opinions were based on evidence of a depressed mood, a persistent or generalized anxiety, constricted affect, feelings of guilt or worthlessness, difficulty thinking or concentrating, poor recent memory, intrusive recollections of a traumatic experience, recurrent panic attacks, vigilance and scanning, anhedonia/pervasive loss of interests, appetite disturbances/weight change, impulsive or damaging behavior, intense and unstable interpersonal relationships, social withdrawal or isolation, and decreased need for sleep and excessive sleep.

*Id.* (citing R. 3320). Per Plaintiff, "[t]hese are appropriate objective findings related to an individual's mental impairments and are confirmed by the treatment record as detailed above in the discussion regarding the treating and examining specialists." *Id.* at 37.

The ALJ "g[a]ve little weight to therapist Brail," explaining that "a licensed clinical social worker is not an acceptable medical source[ ] and findings of disability are reserved to the Commissioner." *Id.*[7] The ALJ also noted that:

> Ms. Brail's [sic] did not submit any clinical notes; her testimony and opinion were heavily based on the claimant's subjective reports, some of which were made during telephone sessions; she was present at a December 2016 appointment where the claimant reported improvement; and the limitations are generally inconsistent with the totality of the evidence, as described above (Ex. 3E; Ex. 1F; Ex. 3F; Ex. 4F; Ex. 5F; Ex. 9F; Ex. 11F; Ex. 13F; Ex. 23F; Hearing Testimony).

*Id.*

When considering other sources, such as licensed clinical social workers, "the ALJ does not need to give these sources controlling weight, but still must consider them in his analysis." *Fleming v. Kijakazi*, No. CV 322-005, 2022 WL 6727253, at *6 (S.D. Ga. Oct. 11, 2022), report and recommendation adopted, No. CV 322-005, 2022 WL 16641056 (S.D. Ga. Nov. 2, 2022) (citing *Farnsworth v. SAA*, 636 F. App'x. 776, 781 (11th Cir. 2016) (*per curiam*). That is what the ALJ did here. The ALJ's reasons for discounting Ms. Brail's opinion are supported by substantial evidence.

Plaintiff states that "[a] layman like an ALJ is simply not competent to say that what he or she perceives as a 'normal' finding in isolation is contradictory to a diagnosis or conclusion by specialists." [ECF No. 20, p. 4]. But this is not a case where the ALJ

---

[7]     Plaintiff acknowledges that Ms. Brail is not an acceptable medical source under the applicable regulations. [ECF No. 13, p. 36].

substituted her opinion for that of a medical professional. An "ALJ [does] not usurp the role of a physician" when "she weigh[s] the credibility of [a doctor's] opinion in light of other record evidence, and she used the reports of [other] physicians and [the state's psychological expert]'s opinion in coming to a determination." *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016).

In sum, the Undersigned finds substantial evidence supports the ALJ's findings with respect to the opinion evidence presented in this case.

**B.**    *VA Disability Determination*

Next, Plaintiff contends that the ALJ did not adequately consider the VA's disability determination, noting that the VA found Ochmanski to be 100% unemployable due to service-connected disabilities. [ECF No. 13, p. 37]. Per Plaintiff, the VA's disability standard is "remarkably similar to the disability standard for SSD." *Id.*

The Commissioner asserts that the ALJ properly evaluated the VA's disability ratings. She notes that:

> the ALJ discussed the VA's disability ratings but found that the evidence the ALJ discussed in the decision supported the RFC she assessed, evidence that included limited mental health treatment at the VA during the beginning of the relevant period; and the treatment notes by VA providers that did not document findings that supported that Plaintiff was as limited as he alleged, or that he had disabling limitations.

[ECF No. 16, p. 13 (citing (R. 2889-90))].

Plaintiff notes in his reply that "when [he] filed [his first] civil action in the District Court, the government moved to remand the case" due to "'clear error by the ALJ

regarding the failure to properly evaluate evidence from the [VA] regarding its disability rating and related evidence'" and that "[t]he most recent ALJ decision made nearly an identical finding, giving 'little weight' to the disability determinations of the VA because a finding of disability under the Social Security Act is 'reserved to the Commissioner' and based on a different legal standard than the VA disability process." [ECF No. 20, p. 7 (quoting (R. 2889-90; 3019))].

As noted above, this Court reversed the first decision due to ALJ Withum's "failure to properly evaluate evidence from the [VA] regarding its disability rating and related evidence." (R. 3011-12; 3018-21). ALJ Withum discussed the VA records in her decision as follows:

> Next, the record contains percentages of disability through the [VA] (Ex. lF/63, 75; Ex. l0F; Ex. 12F/1). Pursuant to SSR06-03p, "[a] decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency [e.g., Workers' Compensation, the Department of Veterans Affairs, or an insurance company] that you are disabled or blind is not binding on us." Therefore, I give these opinions little weight.

(R. 3036).

> On remand, ALJ Wolfe addressed the VA's disability determination as follows:

> I give little weight to the VA July 23, 2013, August 25, 2015, September 22, 2015 opinions that the claimant was unemployable due to service-connected disabilities; and eligible for 100 percent VA disability benefits due to 80 percent service-connected disability, with allocations of 70 percent to anxiety disorder and 20 percent to limited motion of arm (Ex. 1F; Ex. 10F; Ex. 12F). I additionally give little weight to any other VA opinions regarding

disability found in treatment notes (Ex. 1F; Ex. 2F; Ex. 3F; Ex. 4F; Ex. 7F; Ex. 9F; Ex. 23F; Ex. 27F; Ex. 28F).

***

Pursuant to 20 CFR 404.1527(d), I give little weight to the above VA opinions because findings of disability are reserved to the Commissioner. Indeed, the standards and processes used by the VA to make disability determinations differ from that for Social Security benefits. **In any case, I have discussed the opinions of individual VA providers below. Additionally, I have considered the VA determinations of disability and, based on the substantial evidence of record, made appropriate accommodations in the above residual functional capacity.**

(R. 2889-90) (emphasis added).

ALJ Wolfe issued her decision on February 7, 2020. Approximately four-and-a-half months later, the Eleventh Circuit decided *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317 (11th Cir. 2020). Thus, ALJ Wolfe did not have the benefit of *Noble* when she issued her decision.

The Eleventh Circuit in *Noble* "decide[d] what role another agency's decision that a claimant is disabled plays when an ALJ considers whether the claimant is disabled for Social Security purposes" under the old regulations (the regulations applicable here). *Id.* at 1324.[8]

---

[8]     Plaintiff attempts to distinguish *Noble* in his reply. [ECF No. 20, p. 6 ("*Noble* does not control the outcome here. That case ruled that if an ALJ specifically considered the determination of the VA on disability and gave it little weight, such a determination will be affirmed **only if more recent evidence supports a rejection of that decision**." (citing *Noble*, 963 F.3d at 1330) (emphasis added))]. But *Noble*, a published Eleventh Circuit decision, is binding precedent. *See Fortini v. Comm'r of Soc. Sec.*, No. 619CV00465ORLDCI, 2020 WL 3868801, at *2 n.2 (M.D. Fla. July 9, 2020) (noting that *Noble* is "binding precedent on an ALJ's consideration of a VA disability rating").

*Noble* requires a reviewing court to:

> consider two questions in deciding whether an ALJ who declined to follow another agency's decision that a claimant was disabled nevertheless properly considered that decision. First, the court must ask whether the ALJ's decision shows that she considered the other agency's decision. If the ALJ's decision does not discuss the other agency's decision, the case must be remanded to the Commissioner for consideration of the other agency's decision. But if the ALJ discussed the other agency's decision, the court moves on to the second step of the analysis: whether substantial evidence in the record supports the ALJ's decision to depart from the other agency's decision. If there is substantial evidence in the record, then the ALJ's decision should be affirmed.

*Id.* at 1330 (internal citations omitted).

In *Noble*, the Eleventh Circuit affirmed the Commissioner's decision to deny disability benefits because "the ALJ did not reject the other agency's decision simply because the VA applied a different standard to determine whether [the plaintiff] was disabled" and "the ALJ explained that the VA's decision was contradicted by more recent objective medical evidence in the record." *Id.* at 1331.

Plaintiff argues that ALJ Wolfe erred when she "gave 'little weight' to the disability determinations of the VA because a finding of disability under the Social Security Act is

---

Moreover, the ground on which Plaintiff seeks to distinguish *Noble* is unpersuasive because *Noble* does *not* stand for the proposition that the ALJ may reject another governmental agency's disability determination **only** if it is undermined by more recent evidence. The Eleventh Circuit merely stated that the specific reason provided by the *Noble* ALJ for rejecting the VA's disability determination (that the VA's decision was contradicted by more recent objective medical evidence) was supported by substantial evidence. *Noble*, 963 F.3d at 1330-31.

'reserved to the Commissioner' and based on a different legal standard than the VA disability process." [ECF No. 13, p. 38 (citing R. 2889-90)].

Plaintiff is correct that it would be error for an ALJ to rely *solely* on the different standards between the VA and SSA in discounting the VA's disability determination.[9] But here, ALJ Wolfe did not rely *solely* on this ground for assigning little weight to the VA's disability determination. ALJ Wolfe also stated: "I have discussed the opinions of individual VA providers below. Additionally, I have considered the VA determinations of disability and, based on the substantial evidence of record, made appropriate accommodations in the above residual functional capacity." (R. 2890).

Nonetheless, because ALJ Wolfe's proffered reasons for assigning "little weight" to the VA's disability determination are conclusory and the ALJ provides no meaningful explanation (i.e., the ALJ's decision fails to explain what evidence underlying the VA's *disability determination* was considered and why it should be given little weight), the ALJ's decision on this point is not supported by substantial evidence.

---

[9]    *See*, *e.g.*, *Philpott v. Kijakazi*, No. 6:21-CV-323-JRK, 2022 WL 3273950, at *6 (M.D. Fla. Aug. 11, 2022) (remanding case where "[t]he ALJ relied *entirely* on the SSA and VA having different requirements in rejecting the VA disability rating" (emphasis added)); *Trimble v. Saul*, No. 6:19-CV-1074-ORL-JRK, 2020 WL 4746184, at *4 (M.D. Fla. Aug. 17, 2020) ("[T]he ALJ noted that the SSA and the VA have different standards. This reason, *in and of itself*, may not be enough under [*Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x 902, 904 (11th Cir. 2016)], but it must be combined with the balance of the [d]ecision." (emphasis added)); *Pierce v. Soc. Sec. Admin., Comm'r*, No. 5:19-CV-01544-HNJ, 2021 WL 1102439, at *7 (N.D. Ala. Mar. 23, 2021) (noting that "persuasive authority has held that an ALJ cannot rely *solely* upon differences between the VA and SSA disability determination standards to reject a VA disability rating" (emphasis added)).

In *Porter v. Berryhill*, for instance, the ALJ assigned "little weight" to the VA's 100%

disability determination, explaining that:

> [the VA] assessed the claimant with a 100% service connected disability due
> to foot, spine, gastrointestinal and mental impairments. The undersigned
> affords this opinion little weight. **The VA uses different criteria in
> analyzing disability that is not applicable to the sequential evaluation
> process required for Social Security disability determinations. The
> evidence from which the VA derived their [sic] opinion has been
> considered in the current analysis as detailed above**.

No. 18-CV-60210, 2020 WL 475690, at *6 (S.D. Fla. Jan. 13, 2020), report and

recommendation adopted, No. 18-CV-60210, 2020 WL 473131 (S.D. Fla. Jan. 29, 2020)

(emphasis added). This Court determined that the ALJ failed to appropriately address

the VA's disability determination, noting that the first proffered reason (the different

criteria used by the VA and the SSA) "[was] an insufficient reason to discount the VA's

determination. *Id.*

As to the second proffered reason, this Court stated:

> the ALJ's [d]ecision is not saved by the ALJ's one-line statement that "[t]he
> evidence from which the VA derived their [sic] opinion has been considered
> in the current analysis as detailed above." Despite this general
> pronouncement, the ALJ's [d]ecision fails to explain **how or why** the
> evidence underlying the VA's determination should be given little weight
> in the Social Security context.

*Id.* (footnote and citation to the record omitted) (emphasis added); *see also Edward M. v.*

*Comm'r, Soc. Sec. Admin.*, No. 1:20-CV-2524-JSA, 2022 WL 16701954, at *5 (N.D. Ga. Feb.

7, 2022) (remanding for failure to adequately consider the VA's disability determination

where the ALJ "essentially reject[ed] [the VA's disability determination] out of hand

because the VA and SSA use different criteria" *and* "[t]he ALJ's passing reference to having considered 'the evidence upon which [the VA's determination] relies' [did] not change this analysis, as it [was] completely devoid of specificity" (some alterations in original)). The ALJ's decision here suffers from the same infirmity.

To be sure, ALJ Wolfe discussed the medical records from the VA and assigned weight to several of the VA professionals who treated Plaintiff. But "[a]n ALJ's reference to and discussion of medical records from the VA does not substitute for consideration of the VA's disability decision itself." *McCain v. Saul*, No. 8:19-CV-2762-T-SPF, 2021 WL 689278, at *4 (M.D. Fla. Feb. 23, 2021) (citing *Williams v. Barnhart*, 180 F. App'x 902 (11th Cir. 2006)); *see also Watson v. Comm'r of Soc. Sec.*, No. 2:15-CV-185-FTM-CM, 2016 WL 3922937, at *6 (M.D. Fla. July 21, 2016) ("[T]he Court does not find persuasive the Commissioner's argument that it was sufficient for the ALJ to consider and rely upon VA medical records in reaching his conclusion . . . such discussion is not a substitute for consideration and evaluation of the [VA disability] rating itself." (citing *Salamina v. Colvin*, No. 8:12-CV-1985-T-23TGW, 2013 WL 2352204, at *4 (M.D. Fla. May 29, 2013))); *Jones v. Comm'r of Soc. Sec.*, No. 8:20-CV-2498-JSS, 2022 WL 522586, at *5 (M.D. Fla. Feb. 22, 2022) ("The ALJ did not discuss the October 2019 Rating Decision or the VA's letter in the decision. Rather, *the ALJ appears to only have considered the disability percentages in*

*Plaintiff's medical record*. Thus, the ALJ's decision does not demonstrate that the ALJ properly considered the VA's decision." (emphasis added)).[10]

There are myriad reasons for discounting another governmental agency's disability determination. *See, e.g.*, *Torresi v. Comm'r of Soc. Sec.*, No. 8:16-CV-2257-T-23JSS, 2017 WL 2361521, at *5 (M.D. Fla. May 11, 2017), report and recommendation adopted, No. 8:16-CV-2257-T-23JSS, 2017 WL 2348849 (M.D. Fla. May 30, 2017) (finding that ALJ properly discounted the VA's disability determination where the ALJ "assigned little weight to the VA's determination[ ] due to the lack of a functional capacity evaluation, discrepancies between the decision and Plaintiff's medical records, and because the VA's disability standard is disparate from the Commissioner's"); *Figueroa-Padilla v. Comm'r of Soc. Sec.*, No. 619CV2119ORL37GJK, 2020 WL 8083897, at *2 (M.D. Fla. Dec. 28, 2020), report and recommendation adopted, No. 619CV2119ORL37GJK, 2021 WL 100595 (M.D. Fla. Jan. 12, 2021) (ALJ did not err in assigning "some weight" to the VA's disability determination where the ALJ noted that "the VA disability rating system is a vastly different process" *and* the letter containing the 90% disability rating "lack[ed] detailed

---

[10]    Because Ochmanski filed his claim *before* March 27, 2017, the old regulations apply to his case. Under the *new* regulations, the ALJ is no longer "required to assign any persuasiveness or provide any analysis of the VA disability rating. *Ruffin v. Kijakazi*, No. CV 120-177, 2021 WL 6205824, at *4 (S.D. Ga. Dec. 9, 2021), report and recommendation adopted, No. CV 120-177, 2022 WL 19641 (S.D. Ga. Jan. 3, 2022) (citing 20 C.F.R. §§ 404.1504, 404.1520b(c)(1)). Instead, it is sufficient for the ALJ "to consider the evidence underlying the VA's decision." *Id.*

VA rationale"); *Hairston v. Saul*, No. 5:20-CV-119-RV-HTC, 2021 WL 3132733, at *6 (N.D. Fla. July 9, 2021), report and recommendation adopted, No. 5:20-CV-119-RV-HTC, 2021 WL 3131676 (N.D. Fla. July 23, 2021) (finding no error in the ALJ ascribing "little weight" to the VA's disability determination because, *inter alia*, "other than generalized statements regarding the effects of the disorders, the V.A. [did] not provide any basis for its decision").

It may be that one or more of these reasons apply here but the ALJ must articulate them. Because ALJ Wolfe's "decision fails to adequately explain the basis for rejecting the VA's ratings, the [District Court should] decline[ ] to reconstruct the decision to support the ALJ's determination—the [C]ourt must 'examine the administrative decision as delivered.'" *Jones v. Comm'r of Soc. Sec.*, No. 8:20-CV-2498-JSS, 2022 WL 522586, at *5 (M.D. Fla. Feb. 22, 2022) (quoting *Jones v. Berryhill*, No. cv 118-010, 2019 WL 922255, at *6 (S.D. Ga. Jan. 28, 2019)); *see also Porter*, 2020 WL 475690, at *6 ("Although reasons may exist to reject the VA's disability rating, the undersigned cannot affirm 'simply because some rationale might have supported the ALJ's conclusion.'" (quoting *Burch-Mack v. Comm'r Soc. Sec.*, No. 8:15-CV-1167-T-JSS, 2016 WL 4087477, at *5 (M.D. Fla. Aug. 2, 2016))).

The Undersigned notes that ALJ Wolfe's decision does not discuss the underlying rationale for the ALJ's disability ratings and the record citations she provides for the July 23, 2013, August 25, 2015, and September 22, 2015 VA "opinions" do not include any analysis or explanation by the VA (or anyone else) for the assigned disability ratings.

The ALJ cites generally to Exhibit 1F (646 pages of records from the Miami VA Medical Center dated September 24, 2001 through May 21, 2014) as the July 23, 2013 "opinion." (R. 253-898; 2889). While it is true that the words "Rated Disabilities: ANXIETY DISORDER (70%)[;] LIMITED MOTION OF ARM (20%)" are printed on many of the consult requests (*see, e.g.*, R. 315), the Undersigned was unable to locate any explanation for these assigned ratings, nor did the ALJ cite to one.

The August 25, 2015 "opinion" consists of a two-page letter addressed to Plaintiff. (R. 2744-45). It states that "[t]his letter is a summary of benefits you currently receive from the Department of Veterans Affairs (VA)." (R. 2744). It provides information about Plaintiff's military service and a brief summary of the VA benefits Plaintiff receives. *Id.* The letter advises Plaintiff that:

> [The VA is] providing this letter to disabled Veterans to use in applying for benefits such as state or local property or vehicle tax relief, civil service preference, to obtain housing entitlements, free or reduced state park annual memberships, or any other program or entitlement in which verification of VA benefits is required.

*Id.* This letter is exactly what it purports to be. What it is not is an explanation by the VA of the reasons for its disability determination.

The September 22, 2015 "opinion" is a one-page form entitled "Statement of Patient's Treatment." (R. 2753 (some capitalization omitted)). It is addressed to "whom it may concern." *Id.* (capitalization omitted). The form contains the following disclaimer in small print:

> This standardized form has been adopted to expedite response [sic] to frequent requests for information, which are closely similar in substance but which vary in format. [T]he forms received with your request are returned herewith.
>
> Information herein taken from medical records is provided on the understanding that it will be safeguarded and used in accordance with commonly accepted limitations relating to doctor-patient communications.

*Id.* There are no medical records attached to this form. In the remarks section, it states: "The above named veteran has the following service-connected disabilities rated by the Department of Veterans Affairs: Anxiety Disorder -- 70%[;] Limited Motion of Arm -- 20%." *Id.* (some capitalization omitted). There is no explanation for how these percentages were determined.

The Undersigned's own search located an additional, one-page summary of Plaintiff's rated disability (R. 3224) but this document does not provide any explanation or analysis for the percentage ratings listed on that page.

In *Watson*, the court stated that it was "not surprising" "[t]hat the ALJ did not provide any meaningful discussion of the VA rating" because "[a]s noted by the Commissioner, the ALJ had scant evidence before him concerning the *basis* for the VA's rating." 2016 WL 3922937, at *6 (emphasis added). The Commissioner argued, *inter alia*, "that because [the] [p]laintiff submitted only a letter from the VA stating that he had been evaluated as 100% disabled, **and not the detailed explanation of the decision**, the rating [was] of 'limited probative value.'" *Id.* at *3. The one-page letter referenced an enclosure -- entitled, "Your Rating Decision" -- which "provide[d] a detailed explanation of [the

VA's] decision, the evidence considered, and the reasons for [the VA's] decision." *Id.* at *4. But the plaintiff in *Watson* never submitted the rating decision to the Commissioner, only the one-page letter. *Id.* at *6. The plaintiff never addressed his failure to submit the rating decision in his brief and it was not discussed (at least on the record) at the hearing before the ALJ. *Id.*

The *Watson* Court thus stated that "notwithstanding the ALJ's failure to discuss the rating or the weight he provided to it, the Court [had to] determine whether the ALJ's duty to develop the record extended to [the ALJ] requesting [the] [p]laintiff to supplement the record with the VA rating decision." *Id.* The *Watson* Court found that it did:

> the [c]ourt finds the ALJ had a duty to develop a full and fair record, and in doing so permit [the] [p]laintiff to supplement the record with the full VA rating decision. The [c]ourt therefore concludes that remand is warranted here. On remand, [the] [p]laintiff shall be allowed to supplement the record before the ALJ with the VA's rating decision. The ALJ then shall review [the] [p]laintiff's claim again and specifically address in his opinion the VA's rating decision and the weight given.

*Id.* at *8.

The Undersigned suspects that the record here suffers from the same missing document (or documents) identified in *Watson*. Notably, none of the VA "opinions" cited by the ALJ in her decision discuss the underlying bases for the VA's disability (percentage rating) determination. While it is *possible* that the VA's rationale is contained in the voluminous 5,811-page record, the ALJ and the parties did not cite to it. Thus, like *Watson*,

Plaintiff should also be permitted to supplement the record on remand with any documents discussing the reasoning for the VA's disability determination.

In sum, the ALJ's decision does not demonstrate that she adequately considered the VA's disability determination. Because this case is due to be remanded for further consideration of the VA's disability rating, the ALJ should also provide Plaintiff with the opportunity to supplement the record with any documents related to the underlying rationale for the VA's disability rating decision.

**C.** *Plaintiff's Subjective Complaints*

Lastly, Plaintiff contends that the ALJ failed to properly evaluate Ochmanski's subjective statements. [ECF No. 13, pp. 39-43]. Here, the ALJ found that Ochmanski's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (R. 2884).

Plaintiff notes that:

> The ALJ described mental status examinations in the treatment records as "generally benign" ([R]. 2888). She also noted that Mr. Ochmanski had some response to treatment and "stabilization" of symptoms. *Id.* The ALJ found it significant that there were periods of long gaps in treatment. Next, she found GAF scores in the record conflict with a finding of mental disability. *Id.* The ALJ also found it significant that Mr. Ochmanski stopped working full-time in 2011 because he moved and not due to his mental impairments and he subsequently looked for other work ([R]. 2889). Finally, she noted that Plaintiff has been able to engage in some activities of daily living. *Id.*

[ECF No. 13, p. 40].

Ochmanski argues that "[t]he ALJ's evaluation of [his] subjective statements is not supported by substantial evidence" because "the ALJ (1) mischaracterized the record by describing mental status exam findings as 'benign'; (2) erred by concluding that Plaintiff's modest response to treatment and stabilization conflicts with a finding of mental disability; and (3) placed undue reliance on GAF scores in the treatment record." *Id.* at 40-41.

The first two arguments, in essence, are that there is evidence in the record that supports an alternative conclusion than that reached by the ALJ. But, as noted above, this is outside of the scope of this Court's review. *See Fritts v. Saul*, No. CV 1:20-00064-N, 2021 WL 1183807, at *10 (S.D. Ala. Mar. 29, 2021) ("The fact [that the plaintiff] can cite to some evidence cutting against the ALJ's credibility determination does not warrant reversal, as an ALJ's factual determinations, if supported by substantial evidence, must be upheld even if the evidence preponderates against them.").

As to the third argument, the ALJ's decision demonstrates that she did not place undue reliance on Plaintiff's GAF scores. The ALJ's decision noted the limited nature of GAF scores:

> The Commissioner has declined to endorse the GAF scale for "use in Social Security and SSI disability programs," and has indicated GAF scores have no "direct correlation to the severity requirements [of the] mental disorders listings." 65 Fed. Reg. 50746, 50764-65 (2000). Further, GAF scores are a snapshot of what the claimant's level of functioning is at that particular

time, and is not an indication of overall functioning. While some weight
was given to these scores, I must rely on evidence that demonstrates the
claimant's overall ability to function.

(R. 2894).

Plaintiff further argues that the ALJ "erred by discounting Mr. Ochmanski's

allegations based on gaps in Plaintiff's treatment without considering if the claimant had

good cause for not seeking more regular treatment" because the ALJ "should [have]

consider[ed] the impact an individual's mental impairments have on his ability to comply

with prescribed treatment." *Id.* at 41 (citing SSR 16-3p). But even assuming, *arguendo*, that

the gaps in Plaintiff's treatment were an improper consideration, Plaintiff has not shown

that this is grounds for a remand. *See Barchard v. Colvin*, No. 8:13-CV-1530-T-PAZ, 2014

WL 11411860, at *7 (M.D. Fla. Oct. 21, 2014), aff'd sub nom. *Barchard v. Comm'r of Soc. Sec.*,

628 F. App'x 685 (11th Cir. 2015) ("[T]o the extent that the ALJ may have erred by basing

his credibility finding on the Plaintiff's lack of treatment, the Court finds that this error is

harmless because the ALJ provided other substantial evidence to support his credibility

determination and ultimate RFC assessment."); *Chappell v. Berryhill*, No. 4:17-CV-240,

2019 WL 993622, at *1 (S.D. Ga. Mar. 1, 2019) ("[E]ven if [the] plaintiff is correct that the

ALJ gave multiple improper reasons for discounting her credibility, the articulation of

one specific, valid reason means that the outcome would be unchanged." (citing *Crawford

v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 118-59 (11th Cir. 2004))).

Ochmanski also states that although he "stopped working full-time in 2011

because he moved and not due to his mental impairments and subsequently looked for other work" this fact does not contradict "a finding of disabling mental impairments since May 2012" because he "testified that his anxiety worsened significantly around May 2012." *Id.* at 42 (citing (R. 71; 2960)). Thus, merely because his "conditions worsened to the point of disability after he stopped working for other reasons should not be held against [him] nor is it relevant to his credibility." *Id.*

But Ochmanski has not shown that the ALJ erred when she considered Ochmanski's own statements about leaving his job and looking for other work. An ALJ is permitted to consider these factors in evaluating a claimant's testimony. *See Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 949 (11th Cir. 2006) ("[The plaintiff's] daily activities, including her admission that she looked for work while she was allegedly disabled, were inconsistent with her complaints of disabling pain.").

Lastly, Ochmanski argues that his ability to participate in some ADLs do not contradict a finding of disability because:

> [t]his is contrary to the [Eleventh] Circuit's ruling in [*Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1264 (11th Cir. 2019)], affirming earlier holdings from the Circuit that ALJs should not place excessive weight on a claimant's activities of daily living as contrary to a finding of mental disability.

*Id.* at 42.

But *Schink* did not change the standard under which an ALJ evaluates a claimant's subjective statements. In *Schink*, the Eleventh Circuit determined that the plaintiff's mostly solitary daily activities -- "watching television, walking the dog, and cooking" --

"[did] not discount the treating physicians' opinions that *Schink* suffered significantly from mental impairments, particularly when he interacted with others." 935 F.3d at 1264.

Here, the ALJ did not err in considering Ochmanski's daily activities in making credibility determinations. *See Bellew v. Acting Com'r of Soc. Sec.*, 605 F. App'x 917, 929 (11th Cir. 2015) ("While [the plaintiff] contends the fact that he engaged in a 'reasonable range of daily living activities' did not negate the credibility of his subjective testimony, the ALJ was entitled to consider his daily activities when evaluating his subjective symptoms." (citing 20 C.F.R. § 404.1529(c)(3))); *Hoffman v. Astrue*, 259 F. App'x 213, 219 (11th Cir. 2007) ("Although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability, that does not mean it is improper for the ALJ to consider a claimant's daily activities at all." (citations omitted)).

Other courts agree with this approach. *See Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-CV-872-SPC-MRM, 2021 WL 6297530, at *15 (M.D. Fla. Dec. 21, 2021), report and recommendation adopted, No. 2:20-CV-872-SPC-MRM, 2022 WL 61217 (M.D. Fla. Jan. 6, 2022) ("[T]he ALJ considered [the] [p]laintiff's activities of daily living and medical history treatment and appropriately found them inconsistent with [the] [p]laintiff's subjective complaints of pain and alleged activities of daily living limitations."); *Andre H. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01982-RGV, 2021 WL 9666850, at *12 (N.D. Ga. Aug. 23, 2021) ("[C]ontrary to claimant's assertion, the ALJ was entitled to consider these daily

activities, along with the other activities the ALJ considered in assessing the claimant's subjective complaints of pain." (citations omitted)).

In sum, an ALJ is permitted to discount a claimant's testimony, provided that the ALJ "articulate[s] explicit and adequate reasons" for so doing. *Dyer*, 395 F.3d at 1210. "The question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). Here, the ALJ's reasons for discounting Plaintiff's testimony were supported by substantial evidence and reversal on this ground is not warranted.

## VI.    Conclusion

The Undersigned respectfully recommends that the District Court grant Plaintiff's summary judgment motion, deny the Commissioner's summary judgment motion, and that the case be remanded pursuant to 42 U.S.C. § 405(g), with instructions to the ALJ to: (1) provide Plaintiff with the opportunity to supplement the record with any documents concerning the VA's rating decision and (2) meaningfully consider the VA's disability determination and give specific reasons if the ALJ discounts that determination.

## VII.   Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days

of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

 **RESPECTFULLY RECOMMENDED** in Chambers, Miami, Florida, on February 2, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
The Honorable Federico A. Moreno
All counsel of record